RHODE ISLAND BAR ASSOCIATION *vs.* ALFRED A. LESSER, *d.b.a.* RHODE ISLAND FIRE LOSS APPRAISAL BUREAU.

APRIL 30, 1942.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

FLYNN, C. J. This is a bill in equity to enjoin the respondent from engaging in certain activities in Rhode Island which are alleged to amount to the practice of law and to be in violation of general laws 1938, chapter 612, § 43. The complainants are five members of the bar, who are authorized to practice law in this state and who have brought this bill, as individuals and on behalf of the Rhode Island Bar Association, by virtue of § 45 of said chapter. The respondent is not authorized to practice law but is an individual doing business under the trade name of Rhode Island Fire Loss Appraisal Bureau.

After a hearing in the superior court on bill, answer, replication and proof, a decree was entered granting an injunction as to certain of the respondent's activities which were found to amount to a violation of § 43 of said chapter, and denying relief as to other alleged activities that were not proved or that were found not to come exclusively within the practice of law. The cause is before us on the respondent's appeal from that decree.

The bill alleged, in substance, that the respondent is not authorized to practice law in this state; that he openly held himself out and represented to the public generally that he was qualified to make appraisals and adjustments of claims for losses under fire insurance policies and to obtain a better adjustment of these losses than the insured could otherwise obtain; that he solicited from the public

the adjustment of fire losses and actually represented them in negotiating and making settlements or adjustments thereof, giving incidental advice and handling substantially all of the matters necessary to promote such adjustments; and that his contracts for compensation for such services were based upon a percentage of the amount ultimately paid by the insurer to adjust these claims.

The answer of the respondent admitted that he was not authorized to practice law in this state; denied all the material allegations of the bill, in so far as they related to the soliciting, negotiating or obtaining for others an adjustment of their fire losses under policies of insurance; and specifically asserted, as a complete defense to the bill, that he was engaged solely in soliciting and making "appraisals" and "that as to adjusting losses caused by fire, this respondent does not participate therein, or initiate, undertake or handle the same in any way."

The trial justice found on the evidence that complainants had not proved that respondent had violated certain specific provisions of paragraph (3) of clause B, § 43 of chap. 612; and that they had proved certain other activities and conduct on his part that amounted to practice of law as contemplated in § 43, clauses A and B, of that chapter.

The substantial questions underlying the respondent's appeal are: (1) Whether the activities of respondent that are enjoined by the decree come within the purview of the practice of the law as contemplated in chap. 612, § 43; (2) in the event such activities come within such statute, whether there was evidence to support the trial justice's findings that respondent had in fact engaged in those activities in any respect; and (3) whether certain provisions of the decree are inconsistent with the other paragraphs which enjoin certain activities appearing in the evidence.

We have held that certain pertinent statutory provisions, now appearing in G. L. 1938, chap. 612, were constitutional and were enacted in aid of this court's jurisdiction to regulate and supervise the practice of law by way of protecting

the public against such practice by unauthorized persons, so far as therein set forth. *Rhode Island Bar Ass'n.* v. *Automobile Service Ass'n.*, 55 R. I. 122; *Creditors' Service Corp.* v. *Cummings*, 57 R. I. 291. We also have stated that the practice of law, though difficult to define precisely, was understood to embrace in general all advice to clients and all action taken for them in matters connected with the law; and further, as stated by the United States supreme court, that: "Persons acting professionally in legal formalities, negotiations or proceedings by the warrant or authority of their clients may be regarded as attorneys at law within the meaning of that designation as employed in this country." *Rhode Island Bar Ass'n.* v. *Automobile Service Ass'n.*, *supra*. In that case we cited with approval the scope of the language used to describe the practice of law as it appears in the *Opinion of the Justices to the Senate*, 289 Mass. 607, at page 613; and the further treatment of that subject in *Fitchette* v. *Taylor*, 191 Minn. 582. For general treatment of what constitutes the practice of law, see also cases in 111 A. L. R. 19-51 and 125 A. L. R. 1173-1185.

If the respondent here openly and continuously held himself out to the public as being qualified professionally and otherwise to represent them in negotiating and obtaining settlements or adjustments of claims for losses under policies of fire insurance; and if he in fact solicited such claims and generally acted for other persons in negotiating and obtaining adjustments thereof, involving, directly or indirectly, advice or counsel with reference to their claims and rights under the policies; and if he contracted with them for compensation for such services in an amount based upon a percentage of the payment that he thus obtained from the insurer for the insured, such a continued course of conduct and activities, in our opinion, would come within the practice of the law as understood generally in this country and as contemplated in chap. 612, § 43. Since respondent here was enjoined only from such activities, as are above indicated and as were found to exceed mere "appraisal ser-

vice", the first question presented by the appeal is answered in the affirmative.

The second question really boils down to whether, upon the evidence, the respondent in fact restricted his activities to the performing of a mere "appraisal service", as he insists, or whether he persistently engaged in a course of conduct that included solicitations for adjustment of claims for fire losses under policies of insurance, and the representation of and acting generally for others in negotiating and obtaining for them adjustments of such claims and losses.

The complainants introduced evidence from many witnesses who held policies of fire insurance and who had sustained damage to their real or personal property by reason of fire. The details of their testimony differed somewhat but the general substance was the same, as follows: The respondent, personally or through his solicitor, would seek out the insured very shortly after the occurrence of a fire and sell him the idea that respondent was so professionally qualified or otherwise situated as to be able to obtain a better adjustment of his claim under the insurance policy than could be otherwise obtained. He would induce the insured to sign a printed "appraisal service contract". This called for the respondent to make an appraisal and an itemized schedule of valuation of the damaged property, as it was before and after the fire, and to turn over the completed schedule of appraisal to the insured.

For such services the contract called for payment to respondent of a percentage—usually 10%—of the amount which would be "actually recovered" by the claimant from the insurance company. On some contracts there was inserted in handwriting that "if not satisfied no fee" was to be charged. The insurance policies, where available, were then turned over by the insured to respondent and he proceeded to make his inventory and appraisal, to get in touch with the insurer or its adjuster, and to represent the insured in substantially all of the various negotiations and dealings with them. The insured was sometimes present at these

meetings with the adjuster for the insurer and sometimes was absent. At no time, according to the evidence of these witnesses, did respondent ever deliver to the insured a completed inventory and appraisal, as called for by his contract. Nor did the insured generally know what values respondent had reached on his appraisal of the loss, these figures being discussed by him directly with the adjuster for the insured.

Notwithstanding respondent's statement that he always retired from his activities after making the inventory and appraisal, the evidence of these witnesses shows that he never retired therefrom but always continued until payment of the claim was received. This was substantially handled through his office. In some cases claimant was advised by respondent as to the amount the former could get or should accept in adjustment of the loss. He also represented the insured in cases where adjustments were obtained without necessity of any arbitration under the policy and at least in one instance where arbitration was necessary. In that case the respondent, acting for the insured, nominated an arbitrator to act under the terms of the policy. Generally, during the course of respondent's negotiations leading up to an adjustment of the insured's claim, the latter was induced to execute an assignment which, according to respondent, was to protect his fee. This assignment, which would be forwarded by him to the insurer with the proof of loss, read in part: "I/we have retained the services of the Rhode Island Fire Loss Appraisal Bureau on my/our claim arising out of the loss by fire, . . . and the settlement drafts are to be made payable to . . . and/or Rhode Island Fire Loss Appraisal Bureau".

The testimony of these witnesses was corroborated substantially by the evidence from an adjuster for a fire insurance company who had adjusted several claims with the respondent; and also, to a large extent, by inferences from the undisputed evidence of the contract and assignments, as well as by the general conduct of respondent and the re-

sults that were obtained. The respondent, however, expressly denied much of this testimony, explained his view of certain undisputed evidence and failed to specifically contradict certain other evidence. Significantly respondent admitted changing his trade name from Rhode Island Fire Loss Adjusters Bureau to Rhode Island Fire Loss Appraisal Bureau; but the evidence did not show any corresponding change in the nature of his activities.

The trial justice had an opportunity to see and hear all of the witnesses for the complainants and the respondent. The credibility of the witnesses was a large factor in determining whether the respondent was conducting merely an "appraisal service", as he insisted, or whether he was in fact engaging in other activities that were in violation of the statute, unless he were authorized to practice law. The trial justice, in coming to his conclusions, passed favorably on the credibility of the witnesses for complainants and discussed the law and the evidence. We have examined his rescript and the transcript of evidence and we cannot say that he misconceived the law or the material evidence or that he was clearly wrong in finding, upon all the evidence, that respondent in fact engaged in some activities, beyond those required to provide an "appraisal service", that could be enjoined under clauses A and B of § 43, chap. 612.

The third question raised by the appeal is whether the provisions in the decree finding that respondent had not violated paragraph (3) of § 43, chap. 612, and expressly reserving to the respondent certain rights in connection with the conduct of an "appraisal service", are inconsistent with the other portions of the decree whereby the respondent is enjoined from certain other activities heretofore generally discussed. The decree expressly reserves to respondent the right "to solicit from the general public the work of appraising damage caused by fire, making inventory of real and personal property so damaged, appraising the value of such property both prior to and immediately following a fire, and submitting to the owners of the same a complete

and itemized statement showing sound value and loss." Therefore, if he in fact was engaged only in such activities, as he asserted, he could not be aggrieved by this decree. Moreover, unless we extend the meaning of the word "appraising" to inclue general solicitation of claims for adjustment under fire insurance policies and the actual representation of others in negotiating and obtaining such adjustments, there is no inconsistency between provisions in the decree.

The respondent also argues strenuously that his activities cannot come within the practice of law as contemplated by this chapter because other states by statutes have authorized the licensing of public adjusters. The sufficient answer to this argument is that we have no such statute and apparently no case elsewhere has challenged such a statute or presented the precise question involved in this cause. The respondent further relies strongly on the case of *Liberty Mutual Ins. Co.* v. *Jones,* 344 Mo. 932, as supporting his right to engage in all the activities which have been enjoined by this decree. That case did not concern a public adjuster who was soliciting claims for adjustment and holding himself out as qualified to negotiate and obtain for others such adjustments, and who in fact did negotiate and obtain such adjustments for the general public. It concerned an employee of a casualty company which of necessity acted through some servant or agent who, in so acting, was concerned with his own company's obligations. Even in that case the court placed some restrictions upon such an adjuster. In our opinion that case does not assist the respondent in the circumstances presented here.

The respondent's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Harry A. Tuell, Judah C. Semonoff, Edward L. Godfrey, Henry B. Gardner, Jr., Eugene L. Jalbert, James A. Higgins,* for complainants.

*Max Levin, William A. Needham,* for respondent.