Argued September 6, affirmed as modified December 19, 1962

# OREGON STATE BAR *v.* SECURITY ESCROWS, INC. and RALPH PERRY
# OREGON STATE BAR *v.* AMERICAN ESCROW, INC. and HAZEL M. ALTIG

377 P. 2d 334

*Thomas H. Ryan* and *Victor C. Hefferin,* Portland, argued the cause and submitted a brief for appellants.

*Malcolm Montague,* Portland, argued the cause for respondent. With him on the brief were William F. Thomas and James H. Clarke, Portland.

Before McAllister, Chief Justice, and Rossman, Perry, Sloan, O'Connell, Goodwin and Lusk, Justices.

GOODWIN, J.

The Oregon State Bar brought suit against two private corporations and certain of their officers to enjoin them from preparing conveyances and other specified instruments. From a decree granting a part of the relief prayed for, the defendants appeal.

The issue is whether these particular defendants lawfully may draft such instruments as contracts,

deeds, mortgages, satisfactions, leases, options, certificates of assumed business name, bulk-sales affidavits, and the like, as an accommodation for customers who come to them for escrow service.

The defendants perform closing services in connection with real-estate transactions. They are not real estate brokers. They offer to brokers, lawyers, and others their services as depositaries for money and documents in the closing of a wide variety of transactions. The closing fee in each case is based upon the value of the property involved in the transaction, not upon the number or complexity of instruments prepared. The fee may be the same in two cases even though no instruments are prepared in one and many are prepared in another. It is stipulated that no fee is charged for the preparation of instruments. The escrow companies have no interest in the ordinary transactions, but presumably are selected as depositaries because of their disinterest. They have no obligation to any party to any transaction except to carry out the terms of the escrow. They owe no duty to advise the parties on their legal rights, nor do they owe any duty to prepare instruments. They have no reason to protect the rights of any one party as against another. Neutrality is their stock in trade. If the instruments needed by a party to a given transaction were not to be drawn by the defendants, such instruments would have to be drawn elsewhere and brought to the defendants for deposit in the regular course of the escrow business.

The defendants say they will be at a competitive disadvantage if they are enjoined from drawing conveyances. They say they draw the instruments involved in this litigation only because their customers want them to do so, and because satisfied customers

are good for business. They perform the service for the same reason other merchants give other kinds of premiums. It stimulates trade.

The defendants deny that in the performance of the services described they are holding themselves out as qualified to practice law even when the documents drawn by them are custom made for a particular transaction. By far the greater number of documents prepared by the defendants are prepared upon printed forms. (This last observation no doubt could apply as well to most lawyers.) Whether there is a significant difference in principle between the selection of the proper printed form and the selection of the proper words to put on a clean sheet of paper in order to accomplish a particular conveyancing purpose is one of the peripheral questions in this case. First, however, there are other questions that must be noticed.

The defendants contend that it is exclusively a legislative function to define the practice of the law, and that the Oregon legislature has, by its silence, defined the practice of law in such a manner as to exclude from any proscription the activities complained of in this case. The present statutes contain no definition of the practice of law. From 1919 to 1937 there was a statutory definition. See § 32-505, Oregon Code 1930, repealed by Oregon Laws 1937, ch 343.

When the assertion made by the defendants is separated into its component parts, it will be seen that it tenders two issues which are of different kinds. The question whether either the court or the legislature has the exclusive power to define the practice of law is a question of constitutional importance, involving, as it does, the frontier between the separated

powers of government under our state constitution. It is not a question upon which *dictum* should be lightly scattered. We decline to express an opinion upon this question in this case for two good reasons: (1) The question has not been briefed and argued with the thoroughness it deserves when and if it needs to be decided. (2) It is not necessary to decide the question because the legislature has not, since 1937, undertaken to define the practice of law.

■ With the defendants' assertion that the legislature has, by its silence, defined the practice of law so as to exclude therefrom the common forms of conveyancing, we are invited to divine legislative intent from an analysis of legislative silence. The defendants rely upon an opinion by the attorney general in saying that the silence is not inscrutable. An opinion on the practice of law was given in 1937 in response to an oral inquiry from the chairman of the House Judiciary Committee. The defendants say the opinion is some evidence that the assembly intended to enact the current form of the statute on unauthorized practice of law only if such statute (now ORS 9.160) would not be construed so as to prevent the drafting of deeds and mortgages by licensed real estate brokers. See 1936-1938 Ops Atty Gen 190. The opinion speaks for itself. It does not speculate upon the legal effect of facts found in the case at bar. As a practical matter, however, it may be true that some one or more members of the assembly gave consideration to the effect they thought the integrated-bar act might have upon the business methods of various persons who are not lawyers. We have no reason to doubt that such was the case. Even so, we have found no authority for the proposition that legislative silence in this instance is the equivalent of a legislative definition of the

practice of law. We must hold that the legislature has not attempted to define the practice of law, and, accordingly, there is no need to inquire whether it has the power to do so.

Before we may proceed with the case at bar, however, it is necessary to have before us enough of a definition so that we can decide whether the court below should have issued the injunction. We must mark out at least enough of the boundaries of the practice of law so that we can decide whether or not the activities complained of fall within them, leaving to future cases such other definitional problems as may remain unresolved.

There have been numerous attempts elsewhere to define the practice of law.[1] None has been universally accepted.[2] The Arizona Supreme Court has said that

---

[1] From Black's Law Dictionary (1957):

"PRACTICE. Repeated or customary action; habitual performance; a succession of acts of similar kind; habit; custom; usage; application of science to the wants of men; the exercise of any profession. Marker v. Cleveland, 212 Mo. App. 467, 252 S.W. 95, 96; Columbia Life Ins. Co. v. Tousey, 152 Ky. 447, 153 S.W. 767, 768.

"* * * * *

"Practice of law. Not limited to appearing in court, or advising and assisting in the conduct of litigation, but embracing the preparation of pleadings, and other papers incident to actions and special proceedings, conveyancing, the preparation of legal instruments of all kinds, and the giving of all legal advice to clients. State v. Chamberlain, 132 Wash. 520, 232 P. 337, 338. It embraces all advice to clients and all actions taken for them in matters connected with the law. Rhode Island Bar Ass'n v. Lesser, 68 R.I. 14, 26 A.2d 6, 7."

[2] Cases are collected in the Annotation, 53 ALR2d 788 (1955). See, also, New Jersey Bar Ass'n v. Northern N. J. Mtge. Associates, 32 NJ 430, 161 A2d 257 (1960), and the cases collected in Note, 36 Notre Dame Lawyer 374 (1960-61), and Comment, 44 Marquette L Rev 519 (1960-61). A comment in 35 So Cal L Rev 336 (1962) considers California law in light of the recent Wisconsin decision which opens the conveyancing field to a limited class of laymen while conceding that it is the practice of law (State ex rel Reynolds v. Dinger, 14 Wis2d 193, 109 NW2d 685 (1961)).

an exhaustive definition is impossible. Perhaps it is. See *State Bar of Arizona v. Arizona Land Title & Trust Co.,* 90 Ariz 76, 366 P2d 1, 9 (1961), on petition for rehearing, 91 Ariz 293, 371 P2d 1020 (1962). Documents creating legal rights abound in the business community. The preparation of some of these documents is the principal occupation of some lawyers. The preparation of business documents also occupies part of the time of accountants, automobile salesmen, insurance agents, and many others. The practice of law manifestly includes the drafting of many documents which create legal rights. It does not follow, however, that the drafting of all such documents is always the practice of law. The problem, as is frequently the case, is largely one of drawing a recognizable line. Here the line must be drawn between those services which laymen ought not to undertake and those services which laymen can perform without harm to the public.

Whether or not the legislature is the exclusive custodian of the public interest, a matter which, as we have seen, is not now before us, the discipline and control of lawyers is interwoven with the public interest. The discipline of the bar is a matter of judicial concern. *Ramstead v. Morgan,* 219 Or 383, 399, 347 P2d 594, 77 ALR2d 481. History tends to show that as the body of law has grown the community has needed, and continues to need, the services of men and women learned in the law.[9] Indeed, as the rule of law in our society becomes more firmly established, and as the laws become more complex, the need for persons learned in the law increases. Every civilized society recognizes certain human rights and also recognizes

---

[9] Plucknett, A Concise History of the Common Law (5th ed, 1956) 226.

a need for lawyers to aid in securing those rights. Specialized duties in certain areas of activity thus fall upon the legal profession, not because lawyers need the business, but because the business needs lawyers. Laymen are excluded from law practice, whatever law practice may be, solely to protect the public. Since it is the duty of the courts to maintain the discipline of those who act as officers of the courts, it is also the responsibility of the courts, at least in the absence of action by another branch of government, to decide who are officers of the courts and what they may do in that capacity.

■ Turning, then, to the specific matter of documents vesting property rights, the *exercise of discretion* concerning the property rights of another should be entrusted only to those learned in the law. There are, of course, matters in which persons who are not trained in the law can give perfectly sound business advice. However, when laymen select and prepare instruments creating rights in land for other members of the public there is always the danger that they may do the job badly. In the exceptional case the routine procedure may be grossly wrong. Every lawyer knows, for example, how easily a carefully constructed estate plan or tax-minimizing plan can be devastated by the innocent intervention of a layman armed with the best of intentions and the seal of a notary public. We are justified in taking judicial notice of the fact that badly drawn instruments create not only needless litigation but needless loss and liability. A little of this mischief may flow from the carelessness of lawyers, but by far the most of it is the work product of laymen. In either case the injured party may have a cause of action for his damages, but it is in the public interest to keep these difficulties to a minimum.

We noted earlier that there is a question whether a significant difference in principle may be found between the selection of printed forms and the drafting of instruments on a custom basis. We are unable to discover a logical difference in principle. There may be, of course, wide differences in degree. One could arrange upon a spectrum running from high to low the requisite skill and learning needed to perform each task, and no doubt could then classify all sorts of conveyancing in accordance with such an arrangement.

We are invited to engage in such an exercise when the defendants argue that filling out simple forms is not the practice of law. They then proceed up the scale of forms until they contend that filling out complicated forms is not really the practice of law because, after all, a form is only a form. We agree with Pound, J., concurring with the New York Court of Appeals, that "[t]he most complex are simple to the skilled and the simplest often trouble the inexperienced." *People v. Title Guarantee & Trust Co.*, 227 NY 366, 379, 125 NE 666, 670 (1919). It is clear that some conveyances must be drawn by lawyers. Most conveyances undoubtedly should be examined by lawyers. The creation of estates in land is a matter that demands professional legal advice. Few will disagree with the general proposition. One of the defendants conceded at the trial below that custom-made conveyances are probably within the scope of the practice of law.

On the other hand, the defendants contend that there is no need for trained legal advice or discretion in the ordinary case of a warranty deed or real-estate mortgage. They say there is no policy reason for insisting upon mere *pro forma* legal advice in such

cases. If it is true that there is a class of business in which the public can be adequately protected without the intervention of lawyers, then there is no need to force a burdensome formality upon the public.[4]

We believe there is a field in which lay conveyancers can perform a useful service without undue risk of harm to the public. Drawing the line in this case depends, then, upon finding and describing those circumstances in which the public may safely rely upon lay conveyancers, regulated or unregulated by other state agencies as the case may be.

■ For the purposes of this case, we hold that the practice of law includes the drafting or selection of documents and the giving of advice in regard thereto any time an informed or trained discretion must be exercised in the selection or drafting of a document to meet the needs of the persons being served. The knowledge of the customer's needs obviously cannot be had by one who has no knowledge of the relevant law. One must know what questions to ask. Accordingly, any exercise of an intelligent choice, or an informed discretion in advising another of his legal rights and duties, will bring the activity within the practice of the profession. We reject such artificial or haphazard tests as custom, payment,[5] or the quality of being "incidental."[6]

[4] See, e.g., La Brum et al. v. Com. Title Co., Aplnt., 358 Pa 239, 56 A2d 246 (1948), which held that the preparation of conveyances was not the practice of law within the unauthorized-practice statute of Pennsylvania. And see Annotation, 53 ALR2d 788, supra note 2.

[5] Whether or not a fee is charged for the service is also frequently used as a test of determining whether or not the service is "incidental" to the business for which a fee is charged. See Hulse v. Criger, 363 Mo 26, 247 SW2d 855 (1952). Washington

■ The line is drawn at the point where there is any discretion exercised by the escrow agent in the selection or preparation for another of an instrument, with or without costs. This rule applies to any instrument the purpose and result of which is the creation of rights in property or the creation of obligations that can be enforced by the courts. The only difficulty with the line we have drawn lies in the practical enforcement of it. Practical application requires the exercise of good faith on the part of the defendants. We have no reason to believe that they will not conduct themselves accordingly.

The trial court drew the line by enjoining the defendants from preparing (including the filling-in of blanks on printed forms) the following: "real and personal property contracts, mortgages, deeds, conveyances, satisfactions, releases, assignments, leases, bulk sales affidavits, and similar documents affecting legal rights * * *." The decree excepts from its

has rejected the notion that the charging of a fee is relevant at all. See Wash. etc. Ass'n v. Wash. Ass'n etc., 41 Wash2d 697, 251 P2d 619 (1952).

⑥ The argument most frequently urged in favor of lay conveyances is that the preparation of title documents or contracts is not the practice of law, but is only "incidental" to some other line of business. Some courts have upheld the preparation and execution of legal instruments on this "incidental-to-the-business" test. Ingham Co. Bar Ass'n v. Neller Co., 342 Mich 214, 69 NW2d 713, 53 ALR2d 777 (1955); Hulse v. Criger, supra note 5; La Brum et al. v. Com. Title Co., Aplnt., supra note 4 (construing a statute and distinguishing practicing law from practicing conveyancing). Other courts have refused to accept the test. State Bar of Arizona v. Arizona Land Title & Trust Co., 90 Ariz 76, 366 P2d 1 (1961), 91 Ariz 293, 371 P2d 1020 (1962); Beach Abstract & Guaranty Co. v. Bar Assn. of Ark., 230 Ark 494, 326 SW2d 900 (1959); Ark. Bar Assn. v. Block, 230 Ark 430, 323 SW2d 912 (1959), cert. den. 361 US 836, 80 S Ct 87, 4 L Ed2d 76; Hexter Title & Abst. v. Grievance Com., 142 Tex 506, 179 SW2d 946, 157 ALR 268 (1944).

proscription any such documents that may be made in connection with transactions in which the defendants have a proprietary interest.

The decree did not permit the defendants to act as mere scriveners when the selection of the instrument and directions for its completion were made by the customer. If the draftsmanship is the product of an intelligent choice between alternative methods, and the choice is made by the escrow representative, then we agree that it must be enjoined. The escrow companies may not act in an advisory capacity in recommending or designing conveyances as an extra service to their customers. They should be allowed, however, as scriveners, to fill in the blanks in such warranty deeds, purchase-money mortgages, and satisfactions of mortgages and similar forms as are selected by their customers. Such an activity, carried out under the direction of the customer, is not the practice of law. If the customer asks for the service, and tells the escrow what he wants, there appears to be no clear and present danger that the public will suffer.

One of the facts of modern life is that most routine conveyancing, as a practical matter, has been allowed to drift away from lawyers and into the hands of stationers, notaries and others. This phenomenon may be the result of a default by the legal profession. It also may be the result of a diffusion of superficial knowledge in such matters. Whatever the cause, it is now too late to raise the cry of "unauthorized practice of law" each time a lay conveyancer fills in the names, dates, and description on the simple form of warranty deed by which one husband-and-wife combination ordinarily conveys a city lot to another hus-

band and wife as tenants by the entirety.[7] Granting that the drafting of such a conveyance historically was within the practice of law,[8] we hold that the filling-in of forms as directed by customers under modern business conditions is not the practice of law.

The decree should be modified to provide for an injunction against the preparation of the documents presently named in the decree, but excepting therefrom the filling-in of blanks under the direction of a customer upon a form or forms selected by a customer.

---

[7] The Minnesota court was called upon to decide whether legislation in that state authorized brokers to draft conveyances. The court said:

"* * * The line between what is and what is not the practice of law cannot be drawn with precision. Lawyers should be the first to recognize that between the two there is a region wherein much of what lawyers do everyday in their practice may also be done by others without wrongful invasion of the lawyers' field. We think that ordinary conveyancing, part of the everyday business of the realtor, is within that region and consequently something of which the legal profession cannot under present circumstances claim that the public welfare requires restraint by judicial decree. It is the duty of this court so to regulate the practice of law and to restrain such practice by laymen in a common-sense way in order to protect primarily the interest of the public and not to hamper and burden such interest with impractical technical restraints no matter how well supported such restraint may be from the standpoint of pure logic. Viewing the problem before us in that light, we do not think it would be in the interest of the public welfare to restrain brokers from drafting the ordinary instruments necessary to effectuate the closing of the ordinary real estate transaction in which they are acting. We do not think the possible harm which might come to the public from the rare instances of defective conveyances in such transactions is sufficient to outweigh the great public inconvenience which would follow if it were necessary to call in a lawyer to draft these simple instruments." Cowern v. Nelson, 207 Minn 642, 647, 290 NW 795, 797 (1940).

See, also, Reynolds v. Dinger, supra note 2.

[8] In State Bar of Arizona v. Arizona Land Title & Trust Co., supra note 6, the historical foundation of the professional practice of law is carefully documented.

If the customer does not know what forms to use or how to direct their completion, then he needs legal advice. If the customer does know what he wants and how he wants it done, he needs only a scrivener.

Decree modified; costs to no party.

LUSK, J., dissenting.

I think that the acts and practices of the appellants which the court below enjoined constitute the practice of law and that the decree should be affirmed. As it seems to me to be unnecessary, I prefer not to express an opinion at this time as to how far the inherent power of the courts goes in regulating the practice of law. Consideration of that question may well await a case in which it is squarely presented.

O'CONNELL, J., dissenting.

As I understand it the majority opinion holds that the filling-in of forms constitutes the practice of law in some circumstances but not in others. But it is not clear what these circumstances are in relation to the principle which is important in drawing the line between what is and what is not the practice of law. The opinion concludes, "* * * we hold that the filling-in of forms as directed by customers under modern business conditions is not the practice of law." I do not know what thought is meant to be conveyed by the phrase "as directed by customers," or by "under modern business conditions." Obviously, if the defendant or any other escrow company is instructed specifically as to what language is to be included in the document the draftsman is a mere amanuensis and is not engaging in the practice of law.

But the question which the parties want us to decide on appeal is whether the escrow company engages in the practice of law when it fills out forms

without specific directions as to the language to be employed in carrying out the purposes of the party or parties. The drafting of deeds and other instruments of conveyance calls for the making of choices resting upon differences in the legal consequences which attend the use of particular language. Unless the parties to the instrument are made aware of these choices and the consequences of making them, they may end up with a bargain they did not intend to make. One need only examine a treatise such as Patton on Titles to realize the multitude of legal consequences which flow from the use of particular language in an instrument of conveyance. Customers who "direct" escrow companies to draft legal instruments ordinarily do not know what should be included in the instrument. Therefore, they have no way of giving a meaningful "direction" as to how the instrument should be worded. Moreover, the escrow company's customers may need legal advice upon matters which do not relate to the choice of language in the instrument. Thus the seller may need legal advice as to the tax consequences of the sale.

Escrow companies are not licensed to advise their customers as to the legal effect of instruments drawn for them. It is no answer to say that most customers of escrow companies do not care whether or not they have legal advice or are satisfied if a layman gives it to them. The fact that a person is willing to submit to surgery by one not licensed to practice medicine does not constitute a defense to a charge of the unauthorized practice of medicine. The licensing requirements for doctors, lawyers, accountants and other professional occupations are designed to protect the members of the public from the harm which might flow from the activities of unlicensed practitioners. The

need for protection exists where the parties are engaged in transactions involving the transfer of interests in land. If escrow companies are to be permitted to draft deeds, the explanation for the authorization cannot be that they are not practicing law. Rather it must be that in some way they have been given the privilege of doing so.

The majority opinion is confusing in another important particular. The court declines to express an opinion upon the question of whether the court or the legislature has the exclusive power to define the practice of law. The court reaches this conclusion on the ground that "the legislature has not attempted to define the practice of law, and, accordingly, there is no need to inquire whether it has the power to do so." The fact that the legislature has made no effort to define the practice of law has nothing to do with the need to decide where the power to define the practice of law resides. The court concludes that the drafting of deeds under some circumstances is not the practice of law. It would be unnecessary to decide whether the court or the legislature has the power to define the practice of law only if it could be said that the same conclusion must necessarily be reached in the interpretation of ORS 9.160.[1] I do not think that it can be said categorically that the legislature intended to exclude from the proscription of the statute the activities of escrow companies in drafting deeds and other instruments relating to real property transactions. In fact the contrary conclusion would seem more reasonable in view of the fact that historically

[1] ORS 9.160 states: "Except for the right reserved to litigants by ORS 9.320 to prosecute or defend a cause in person, no person shall practice law or represent himself as qualified to practice law unless he is an active member of the Oregon State Bar."

the drafting of such instruments has been regarded as the province of the lawyer. The majority has defined the practice of law without any consideration of what the legislature may have intended in enacting ORS 9.160. For that reason I think that there is implicit in the majority opinion an assertion of inherent judicial power to decide what constitutes the practice of law.

I am of the opinion that the court does not have the inherent and exclusive power to make that decision.[2] I recognize that the weight of authority supports the contrary view.[3] However, I cannot find a satisfactory basis for concluding that the legislature does not have the right to formulate the state's policy in this respect. We would not question the power of the legislature to define the permissible area of other professional activities, such as the practice of medicine, dentistry, and accountancy. There is no more reason for questioning the legislature's power to regulate the practice of law except where the regulation violates the separation of powers doctrine under our constitution. The principle of separation of powers is not violated by legislative regulation of the practice of law unless the regulation affects the operation of the judicial process.[4] The judicial process would not

[2] This view is taken in Beardsley, The Judicial Claim to Inherent Power Over the Bar, 19 A B A J 509 (1933); Comment, Control of the Unauthorized Practice of Law: Scope of Inherent Judicial Power, 28 U Chi L Rev 162 (1960). A contrary position is set out in Dowling, The Inherent Power of the Judiciary, 21 A B A J 635 (1935).

[3] Dowling, supra note 2, collects cases at 636, n. 13.

[4] This does not mean that the courts may not exercise control over matters vital to their operation. For example, they may regulate disciplinary proceedings where the proceedings are necessary to maintain the proper function and dignity of the courts. See Ramstead v. Morgan, 219 Or 383, 347 P2d 594, 77 ALR2d 481 (1959).

be affected by legislation which permitted escrow companies to engage in that part of the practice of law which consists of drafting instruments required in real estate transactions.

In the present case the question is whether the legislature has made this special dispensation in favor of escrow companies. There is nothing in the statutes or in the legislative history of ORS 9.160 suggesting that the drafting of deeds and other instruments of conveyance are to be considered outside of the practice of law. The court should hold that the defendant is in violation of the statute since there is no basis for removing such activities from the proscription of ORS 9.160. If those activities are to be permitted, it is for the legislature and not for this court to grant the privilege.

SLOAN, J., joins in this dissent.