Argued April 4, reversed May 3, 1977

OREGON STATE BAR, *Respondent,*
*v.*
FOWLER, *Appellant.*
(TC 418-805, SC 24646)
563 P2d 674

James Scudder, Troutdale, argued the cause and filed the briefs for appellant.

Walter H. Grebe, of Anderson, Hall, Lowthian, Gross, Grebe & Jensen, Portland, and Darrell S. Cornelius, Portland, argued the cause and filed the brief for respondent.

TONGUE, J.

## TONGUE, J.

This is a suit by the Oregon State Bar against a real estate broker for an injunction to restrain defendant "from drafting or filling in the forms of any deeds or real estate contracts," in violation of ORS 9.160.[1] Defendant appeals from a decree which enjoins him, among other things, from "selecting" or "preparing" any documents "affecting rights or interests in real property, even through commonly available forms, unless acting as a mere scrivener."[2]

Defendant contends on this appeal, among other things, that ORS 9.160 is unconstitutional; that "the authorities and the statutes and the case law of Oregon grant a real estate broker, as agent of his principal, the right to select, prepare and execute legal instruments within the scope of the broker's profession"; that the complaint failed to state a cause of action; that "the decree as written is so overbroad as to preclude defendant from working as a real estate broker"; that there was no proof of any injury to any member of the public, including the buyers involved; and that, in any event, the uncontroverted evidence

[1] ORS 9.160 provides:

"Practice of law by persons other than active members. Except for the right reserved to litigants by ORS 9.320 to prosecute or defend a cause in person, no person shall practice law or represent himself as qualified to practice law unless he is an active member of the Oregon State Bar."

[2] The specific terms of the decree are as follows:

"1. Selecting for customers, clients or any other person, documents conveying title to real property or documents affecting rights or interests in real property;

"2. In preparing for customers, clients or any other person, documents conveying title to real property or documents affecting rights or interests in real property, even through commonly available forms, unless acting as a mere scrivener;

"3. In exercising judgment in preparing for customers, clients or any other person, documents conveying title to real property or documents affecting rights or interests in real property; and

"4. In carrying on any activity which will aid Defendant in the violation of paragraphs 1 through 3 of this Decree."

For companion case, see *State v. Fowler,* 18 Or App 486, 525 P2d 1061 (1974).

was that defendant "used the legal forms the seller wanted used" and that "the seller furnished defendant with the terms and legal descriptions" to be included in such documents, with the result that defendant did in fact act as a "mere scrivener."

In response the Oregon State Bar not only denies all of these contentions but contends, among other things, that the preparation of six documents did not involve the simple filling out of forms, but included the establishment of easements for road right-of-ways and water systems and that even the preparation of a form earnest money agreement by a real estate broker is prohibited as the practice of law in violation of ORS 9.160.[3]

These conflicting contentions raise serious and difficult questions of law. Upon examination of the record in this case, however, which we review de novo, we find that the Oregon State Bar failed to offer sufficient evidence to prove, under the allegations of its complaint, that in preparing the documents in question defendant did other than "use the legal forms the seller wanted" and that "the seller furnished defendant with the terms and legal descriptions," including "the language of the easements and the community water systems," as contended by defendant. An "injunction is an extraordinary remedy and it should not be granted except upon clear and convincing proof." *Bennett v. City of Salem et al,* 192 Or 531, 546, 235 P2d 772 (1951).

2. The original complaint by the Oregon State Bar alleged, as the basis for such an injunction, that defendant was not an active member of the Oregon State Bar and that he "caused, under his supervision, to be prepared for execution six documents, all on Stevens-Ness forms, including four contracts of sale, a quitclaim deed and a warranty deed, in violation of

_____

[3] *Cf. State Bar v. Security Escrows, Inc.,* 233 Or 80, 377 P2d 334 (1962).

ORS 91.160."[4] Defendant did not demur to that complaint, but filed an answer which admitted that defendant "caused, under his supervision" the preparation of the six documents and denied that such conduct was in violation of ORS 9.160.

At the beginning of the trial defendant's attorney offered to stipulate that the documents were "prepared by the Defendant under his supervision"; that they were all on forms prepared by Stevens-Ness and that "under the Security Escrows holding, * * * the forms were executed under the direction of the owner," leaving "the issue of the harm."

The attorney for the Oregon State Bar then stated that he desired to offer evidence of errors made in the documents (going to the issue of "harm") and that because of the possibility of an appeal he thought "it would be better to have a more complete record to show the preparation," but that he "presume[d] * * * the Defendant is going to be precluded [by his admissions] from putting on any evidence with respect to the preparation of the documents." The trial court agreed that this was "an appropriate ruling."

The Oregon State Bar called as witnesses both the defendant and Raymond Smith, the owner of the property sold by defendant as real estate broker.

Mr. Smith testified without objection on cross-examination that "over the years" he had purchased and sold some 25 or 30 parcels of land; that in selling land he used either Stevens-Ness form land sales contracts or warranty deeds, which on occasion he had prepared himself. He was then asked, with reference to the first document, a Stevens-Ness land sales contract, attached to the complaint:

"Q   (By Mr. Scudder) Exhibit A, whose words are on

---

[4]After the conclusion of the testimony, the Oregon State Bar was permitted to amend the complaint to provide that defendant "selected and caused, under his supervision, to be prepared" such documents.

the bottom of the legal description in reference to the community water system? Are those your words?

"A  Yes.

"Q  Did you tell Mr. Fowler how to make this description?

"A  Yes.

"Q  Did you leave any part of this, to your knowledge, up to Mr. Fowler to determine on his own?

"A  No. * * *"

Mr. Smith was then asked, with reference to the second attached document:

"Q  Now on Exhibit B the words appear typed on the end, 'Together with an easement for driveway as now exists at Alex Barr Rd.' Whose words were those? Yours or Mr. Fowler's?

"A  Mine.

"Q  And further words, 'Together with an undivided interest in a community water system,' etc. Were those your words or Mr. Fowler's?

"A  Mine.

"Q  And again the terms of sale, the dollar amount and the interest and all this data in there, were those your words or Mr. Fowler's?

"A  Mine.

"* * * * *"

He also testified that the legal descriptions used in the documents were prepared by a surveyor hired by him and that he gave those descriptions to defendant.

Mr. Smith also testified that it was his "idea" to use the Stevens-Ness quitclaim deed, one of the documents involved; that he also "selected" the warranty deed; that "the only warranty deed [he used was] Stevens-Ness"; and that "other than the legal description [which was the language of the surveyor] and other than the form words, all the words filled in [were his] words" (i.e., those of Mr. Smith).

Mr. Fowler also testified without objection, substantially to the same effect on cross-examination.

With reference to the easement and the water system he was asked:

"Q I think we are down to just the writing itself. Where did the writing come from, the words in the easement, the words in reference to the water?

"A From Mr. Smith.

"Q Did he allow you any discretion in this matter—

"A No.

"Q —as far as the documents?

"A No.

"* * * * *."

We may or may not question the credibility of this testimony by defendant and by Mr. Smith. The Oregon State Bar, however, did not call any witnesses to testify to the contrary or offer any other evidence which, in our judgment, was sufficient to sustain its burden to prove defendant either "selected" the forms to be used or was responsible for the choice of any of the words used in filling out such forms, so as to establish that defendant "acted other than as a mere scrivener."

■ It is contended by the Oregon State Bar that defendant "admitted that he *prepared* the documents." We do not, however, construe defendant's admission that he "prepared" the documents as being necessarily inconsistent with his position that in doing so he acted "merely as a scrivener" for Mr. Smith and that he exercised no discretion in the choice of words in filling out the Stevens-Ness forms, but that all of such words were from Mr. Smith.

It is also contended by the Oregon State Bar that, even assuming such facts to be true, defendant nevertheless practiced law in violation of ORS 9.160 in that he exercised discretion in the preparation of these documents in that he "selected" the forms to be used. In support of this contention it is stated that

"* * * [D]efendant admitted that he selected and caused, under his supervision, to be prepared for execution the deeds and real estate contracts, including the

[ 175 ]

easements contained therein, which are exhibits to the Complaint (Tr 3.)"

Upon reading that portion of the transcript, however, it appears that at the beginning of the trial defendant's attorney admitted "all matters pertaining to the documents" and that "they were prepared by the defendant, under his supervision" on Stevens-Ness forms. At the time of that stipulation, however, the allegations of the complaint were that "[d]efendant *caused,* under his supervision, *to be prepared*" the various documents in question. It was not until after the conclusion of the trial that the Oregon State Bar asked for, and was given, leave to amend that allegation by interlineation to read:

"Defendant *selected and* caused * * * to be prepared * * *." (Emphasis added)

Thus, defendant did not admit that he "selected" the forms to be used. Again, his admission that he "prepared" such documents is not sufficient, in our judgment, to sustain the Oregon State Bar's burden to prove that he "selected" the forms to be used. That admission is not necessarily inconsistent with defendant's position that he was told by Mr. Smith what forms to use and that in "preparing" these documents he acted "merely as a scrivener" for Mr. Smith.

Both parties rely heavily upon the majority opinion by this court in *State Bar v. Security Escrows, Inc.,* 233 Or 80, 377 P2d 334 (1962), from which three members of the court dissented. Thus, the Oregon State Bar contends that:

"In that case this Court approved an injunction which precluded preparing: 'real and personal property contracts, mortgages, deeds, conveyances, satisfactions, releases, assignments, leases, bulk sales affidavits and similar documents affecting legal rights . . .' unless the party has a proprietary interest. P. 90-91. *It modified the decree to permit '. . . filling-in of blanks under the direction of a customer upon a form or forms selected by a customer.* If the customer does not know what forms to use or how to direct their completion, then he needs legal advice. If the customer does know what he wants and

[ 176 ]

how he wants it done, he needs only a scrivener.' P. 92-93." (Emphasis added)

On the other hand, defendant points out that *Security Escrows, Inc.,* did not involve a real estate broker, but an independent escrow service, and contends that the majority of this court recognized that distinction by quoting (at 92 n. 7), with apparent approval, from *Cowern v. Nelson,* 207 Minn 642, 647, 290 NW 795, 797 (1940), as follows:

" '* * * The line between what is and what is not the practice of law cannot be drawn with precision. Lawyers should be the first to recognize that between the two there is a region wherein much of what lawyers do everyday in their practice may also be done by others without wrongful invasion of the lawyers' field. We think that ordinary conveyancing, part of the everyday business of the realtor, is within that region and consequently something of which the legal profession cannot under present circumstances claim that the public welfare requires restraint by judicial decree. It is the duty of this court so to regulate the practice of law and to restrain such practice by laymen in a common-sense way in order to protect primarily the interest of the public and not to hamper and burden such interest with impractical technical restraints no matter how well supported such restraint may be from the standpoint of pure logic. Viewing the problem before us in that light, *we do not think it would be in the interest of the public welfare to restrain brokers from drafting the ordinary instruments necessary to effectuate the closing of the ordinary real estate transaction in which they are acting.* We do not think the possible harm which might come to the public from the rare instances of defective conveyances in such transactions is sufficient to outweigh the great public inconvenience which would follow if it were necessary to call in a lawyer to draft these simple instruments.' " (Emphasis added by defendant)

Because of the basis on which we decide this case, however, we need not consider in this case the question of how "the line" is to be drawn between "what is and what is not [unauthorized] practice of law" as between lawyers and real estate brokers. The Oregon State Bar, even under the view taken by it of our previous

decision in *Security Escrows, Inc.,* failed to sustain its burden to prove that in the preparation of the documents involved in this case the defendant did anything other than to engage in the "filling in of blanks under the direction of a customer upon a form or forms selected by a customer."

For these reasons the decree of the trial court must be reversed and plaintiff's complaint dismissed.