Argued and submitted May 5, reversed July 15, 1998

Lia Nikolaevna BOLDT,
*Respondent,*

*v.*

James Harlan BOLDT,
*Appellant.*

(97-DR-0441; CA A99286)

963 P2d 719

Claudette L. Yost argued the cause and filed the brief for appellant.

No appearance for respondent.

Before De Muniz, Presiding Judge, and Haselton and Linder, Judges.

LINDER, J.

## LINDER, J.

Petitioner (wife) successfully obtained a restraining order against respondent (husband) under the Family Abuse Prevention Act (FAPA), ORS 107.700 *et seq.* Respondent appeals, challenging the sufficiency of the evidence to support the order. We review *de novo, Strother and Strother,* 130 Or App 624, 629, 883 P2d 249 (1994), *rev den* 320 Or 508 (1995), and reverse.

We recount only the facts essential to explain the basis for our decision. At the time in question, petitioner and respondent had been married for about three years. Prior to her immigration to this country from Russia, petitioner corresponded with respondent. Beginning with that correspondence, continuing through their first year living together in this country, and then continuing throughout their three years of marriage, petitioner and respondent had what the parties agree is described accurately as a dominant-submissive relationship. Petitioner was considered a "slave girl" and respondent was considered her "god" or "sovereign," roles that characterized certain aspects of their private, interpersonal relations.

Petitioner applied for the restraining order based on an incident that occurred in November 1996. Respondent was unhappy that petitioner had chosen not to accompany him on a particular weekend trip. As a result, when he returned home, he was physically and emotionally distant from petitioner. She approached him, asking for his forgiveness, describing herself as a "bad slave girl" and suggesting that he "punish" her. The "punishment," which had been used before, was for respondent to strike petitioner with a belt across the buttocks. He did so five times, inflicting considerable pain, but evidently no other injury. Afterwards, they hugged, were physically affectionate, and talked about feeling emotionally closer to each other. At the hearing on the FAPA petition, petitioner described such practices and roles as part of the "customs" the parties had followed throughout their relationship.

After November 1996, no similar physical "punishment" occurred again. Petitioner continued to live with

respondent until April 25, 1997, at which point they separated in anticipation of a dissolution. On April 26, 1997, one day before she would no longer be able to seek a restraining order based on the November incident, ORS 107.710, petitioner filed a petition to restrain respondent from having any contact with her and their two-year-old son. The court issued a restraining order. Respondent then requested a hearing to contest the order. ORS 107.716; ORS 107.718(8). At the hearing, the parties stipulated that dissolution proceedings were underway and that all issues regarding custody and visitation with the parties' son should be resolved in that case. At the conclusion of the hearing, the trial court denied respondent's objections to the restraining order.

Under ORS 107.718(1), a court may issue a restraining order upon a showing that the petitioner "has been the victim of abuse committed by the respondent within 180 days preceding the filing of the petition" and that "there is an immediate and present danger of further abuse to the petitioner." Respondent argues that the conduct in this case is not "abuse" under the statute, because it was consensual. Respondent also argues that a restraining order should not have issued because there was an inadequate showing that petitioner was in immediate and present danger of the conduct recurring.

We need not decide whether and under what circumstances FAPA reaches pain-inflicting activity engaged in by competent, consenting adults.[1] Even assuming that respondent "abused" petitioner within the meaning of the statute, petitioner's additional burden was to establish by clear and convincing evidence that she was in immediate and present

---

[1] For example, many if not most contact sports (*i.e.*, boxing, football, rugby, hockey) can involve the infliction of significant pain and, indeed, lasting injury. We have no doubt that FAPA was not intended to reach such activities. On the other hand, notions of consent, agreement, or mutuality must be approached with particular care in domestic contexts. Words of consent can be spoken under circumstances in which the words are not a reflection of genuine volition and free will. That may be particularly true of patterns of abuse and battery in interpersonal relationships, which can involve complicated emotional dynamics that preclude free choice and voluntary behavior. We are not prepared to declare that whenever competent adults agree to engage in conduct that involves inflicting pain, the behavior necessarily constitutes abuse, as that term is typically used by the legislature. In this case, however, we need not decide, either statutorily or factually, where the line is.

danger of further abuse. *See Oregon State Bar v. Fowler*, 278 Or 169, 172, 563 P2d 674 (1977) (an injunction is an extraordinary remedy which should not be granted except on clear and convincing proof). The record is devoid of evidence to carry that burden. At no point did petitioner testify or even suggest that she feared a repetition of the conduct in question or that it was part of a cycle of abuse that was likely to repeat itself and from which she could not extricate herself. Nor are we satisfied from the circumstances as a whole that, by a clear and convincing standard, such a conclusion follows inferentially. In the absence of evidence on that point, the restraining order should have been vacated.

Reversed.