The STATE UNAUTHORIZED PRAC-
TICE OF LAW COMMITTEE,
Plaintiff,

v.

PAUL MASON & ASSOCIATES, INC.,
d/b/a Creditors Bankruptcy Service,
and Paul Mason, individually, Defen-
dants.

Civ. A. No. 3:91–CV–1582–X.

United States District Court,
N.D. Texas,
Dallas Division.

Oct. 20, 1993.

Robert Randall Ries, Carrington Coleman Sloman & Blumenthal, Harry Kendall Wasoff, Jr., Law Office of Harry K Wasoff, Jr., Dallas, TX, for plaintiff.

Michael David McKinley, Timothy David Zeiger, Robert C. Hinton, Jr. and Stephen W. Shellenberger, McKinley Hinton & Ringer, Dallas, TX, for defendants.

## MEMORANDUM OPINION AND ORDER

KENDALL, District Judge.

Before the court are Plaintiff's Motion for Summary Judgment, filed June 22, 1992; Defendants' Motion for Summary Judgment, filed June 30, 1992; and their respective responses and replies. After carefully considering the motions, briefs, supporting evidentiary submissions, and applicable law, the court determines that Defendants' Motion for Summary Judgment is GRANTED and Plaintiff's Motion for Summary Judgment is DENIED.

## BACKGROUND

The Unauthorized Practice of Law Committee of the Supreme Court of Texas ("UPLC") brings this action against Paul Mason & Associates, Inc., d/b/a Creditors Bankruptcy Service and Paul Mason, individually (collectively referred to as "Mason") alleging that Mason practices law without a license in violation of Tex.Gov't Code Ann. § 81.102. Paul Mason formed Creditors Bankruptcy Service ("CBS") in April 1983 to act as an agent for creditors in performing clerical and administrative tasks in bankruptcy cases. Since its inception, CBS has acted as an agent for creditors in over 100,000 filings in bankruptcy court in Texas.

CBS's clients ("creditor clients") are almost exclusively major national retail companies, such as Dillard Department Stores, Foley's, JC Penney, Pier 1 Imports, and Neiman–Marcus. These creditor clients hire CBS to handle their noncontingent, liquidated claims against debtors because the amount of each claim is too small for the clients to manage themselves in an economical manner, and because it would be cost prohibitive to hire an attorney to manage the claims, as the hourly rate of an attorney would usually exceed the amount of each claim. CBS does not handle disputed accounts.

Creditor clients obtain from CBS services similar to those provided by a debt collection agency. When CBS receives a claim from a creditor client, CBS files a proof of claim, monitors the status of the case, and contacts the debtor to determine if the debtor wants to reaffirm the debt rather than relinquish the collateral securing the debt. If the debtor decides to reaffirm, CBS negotiates the reaffirmation agreement within the creditor client's predetermined parameters and then types the amount owed and debtor's name on the reaffirmation agreement form provided by the creditor client. If a debtor disputes a claim, CBS returns the entire claim back to the creditor client's legal department. CBS has a company policy prohibiting employees from providing legal advice.

Prior to this lawsuit and related investigation of Mason, the UPLC investigated Mason for the unauthorized practice of law in November 1986. After an investigation conducted by State District Judge Kelly

Loving on behalf of the UPLC, the UPLC voted to close the case against Mason without any further action. Although Mason's business practices remain unchanged since this first investigation, the UPLC initiated a second investigation of Mason after it received a letter from a debtor's attorney who complained after he received a letter from CBS that Mason was practicing law without a license.

After an investigative hearing, the UPLC sued Mason in state court seeking an injunction prohibiting Mason from engaging in activities related to the federal bankruptcy court. Mason removed the case to this court in August 1991 on the basis of federal subject matter jurisdiction. Agreeing that no issues of material fact exist in the case, all parties have moved for summary judgment.

## SUMMARY JUDGMENT

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment or partial judgment as a matter of law. Fed.R.Civ.P. 56(c); *Slaughter v. Southern Talc Co.*, 949 F.2d 167, 170 (5th Cir.1991). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The substantive law will identify which facts are material. *Id.*, at 248, 106 S.Ct. at 2510. The nonmovant is not required to respond to the motion until the movant properly supports his motion with competent evidence. *Russ v. International Paper Co.*, 943 F.2d 589, 591 (5th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 1675, 118 L.Ed.2d 393 (1992). However, once the movant has carried his burden of proof, the nonmovant may not sit idly by and wait for trial. *Page v. DeLaune*, 837 F.2d 233, 239

(5th Cir.1988). When a movant carries his initial burden, the burden then shifts to the nonmovant to show that the entry of summary judgment is inappropriate. *Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir.1992). Although the nonmovant may satisfy this burden by tendering depositions, affidavits, and other competent evidence, "[m]ere conclusory allegations are not competent summary judgment evidence, and they are therefore insufficient to defeat or support a motion for summary judgment." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.1992), *cert. denied*, — U.S. —, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). In short, "the adverse party's response ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Merely colorable evidence or evidence not significantly probative, however, will not defeat a properly supported summary judgment. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11. The existence of a mere scintilla of evidence will not suffice. *Id.* at 252, 106 S.Ct. at 2512. When the nonmoving party fails to make the requisite showing and the moving party has met its summary judgment burden, the movant is entitled to summary judgment. Fed.R.Civ.P. 56(c); *Campbell v. Sonat Offshore Drilling*, 979 F.2d 1115, 1119 (5th Cir.1992).

## DISCUSSION

The issue for determination is whether the independent authority of the federal courts to regulate practice in federal cases pending in federal court preempts Texas state law from regulating the same—in essence, whether the State of Texas may regulate who will be allowed to practice in the federal courts. The UPLC seeks an injunction prohibiting Mason from engaging in activities related to the bankruptcy court. The UPLC claims that Mason is practicing law without a license in violation of Tex.Gov't Code Ann. § 81.102.[1] In re-

---

1. Tex.Gov't Code Ann. § 81.102 provides:

(a) Except as provided by Subsection (b), a person may not practice law in this state unless the person is a member of the state bar.

(b) The supreme court may promulgate rules prescribing the procedure for limited practice of law by:
(1) attorneys licensed in another jurisdiction;
(2) bona fide law students; and

sponse, Mason argues that Bankruptcy Rule 9010(a) authorizes him or his company CBS to act as agents for their creditor clients in connection with cases pending in bankruptcy court so long as he or CBS does not perform an act constituting the practice of law.[2] To resolve this controversy, this court must determine whether Bankruptcy Rule 9010(a) preempts Tex. Gov't Code Ann. § 81.102.

### Inherent Authority of the Federal Courts

Before turning to the preemption issue, the court reviews the nature and scope of the federal courts' power to regulate practice in their cases. Federal courts have undisputed, inherent authority to regulate practice in cases pending before them. *Chambers v. Nasco, Inc.,* — U.S. ——, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). A federal court also retains "an absolute and unfettered power ... to admit and to discipline members of its bar independently of and separately from admission and disciplinary procedures of ... the state courts...." *In re Abrams,* 521 F.2d 1094, 1101 (3d Cir.1975). A federal court has the power to prescribe rules for the conduct of its business as long as the rules are consistent with the Acts of Congress and the rules of practice and procedure. 28 U.S.C. § 2071; *see also* Fed.R.Civ.P. 83 (providing that each district court may make rules governing its practice not inconsistent with federal rules of civil procedure). The inherent authority of the federal courts to regulate practice before them necessarily extends to bankruptcy courts because the bankruptcy courts are simply a "unit" of the federal district courts as provided by 28 U.S.C. § 151.

The UPLC does not dispute the federal courts' authority to regulate practice in cases before them.[3] Rather, the UPLC claims that the State of Texas should also regulate practice in cases pending in federal courts, for two reasons.[4] First, the UPLC asserts that federal law has not prescribed the qualifications for practice, and second, the UPLC asserts that state regulations are consistent with the federal standards. The court determines, however, that Texas state law is preempted because the federal courts have prescribed qualifications for practice, so that regulation by the State of Texas would be fundamentally inconsistent with the federal standards.

### Preemption

Where federal law authorizes an agent to practice before a federal tribunal, the federal law preempts a state's licensing requirements to the extent that they are contrary to federal law. *Sperry v. Florida ex. rel. Bar of Florida,* 373 U.S. 379, 385, 83 S.Ct. 1322, 1325, 10 L.Ed.2d 428 (1963). In *Sperry,* the Florida Bar brought an action against Sperry alleging that he was practicing law without a license in violation of a Florida statute. Sperry was registered to practice before the United States Patent Office. As a registered patent agent, Sperry was authorized "to advise and assist [patent applicants] in the presentation and prosecution of their applications before the Patent Office." *Id.,* at 384–85, 83 S.Ct. at 1325–26. Accordingly, Sperry began to prepare and prosecute patent applications in the State of Florida. Because Sperry was not licensed to practice law by the State of Florida, the Florida Bar sought to enjoin Sperry from preparing and prosecuting patent applications. The Supreme Court held that since Sperry was authorized by federal law to practice before the Patent Office, the State of Florida could not enforce its licensing requirements against Sperry.

In preempting the State of Florida's licensing requirements, the Supreme Court

---

 (3) unlicensed graduate students who are attending or have attended a law school approved by the supreme court.

**2.** Bankruptcy Rule 9010(a) provides:
 A debtor, creditor, equity security holder, indenture trustee, committee or other party may (1) appear in a case under the Code and act either in his or its own behalf or by an attorney authorized to practice in the court,

and (2) perform any act not constituting the practice of law, by an authorized agent, attorney in fact, or proxy.

**3.** Plaintiff's Supplemental Brief in Support of Its Motion for Summary Judgment at 2.

**4.** *Id.* at 3.

reasoned that if the State of Florida were permitted to enforce its licensing requirements where contrary to federal law, the State of Florida would have the power of review over federal licensing requirements. The Supreme Court stated:

> A State may not enforce licensing requirements which, though valid in the absence of federal regulation, give "the State's licensing board a virtual power of review over the federal determination" that a person or agency is qualified and entitled to perform certain functions, or which impose upon the performance of activity sanctioned by federal license additional conditions not contemplated by Congress. "No State law can hinder or obstruct the free use of a license granted under an act of Congress."

*Sperry*, 373 U.S. at 385, 83 S.Ct. at 1325 (citations omitted). The Court made this preemption determination pursuant to the Supremacy Clause, U.S. Const. art. VI, cl. 2. *Sperry* at 385, 83 S.Ct. at 1325.

The Supreme Court preempted the State of Florida's licensing requirements to the extent that they were incompatible with federal law. *Id.*, at 383, 83 S.Ct. at 1325. The Court recognized that Sperry's preparation and prosecution of patent applications was considered by the State of Florida to be the practice of law by a nonlawyer in violation of the state's licensing requirements. The Court noted that "Florida has a substantial interest in regulating the practice of law within the state and that, in the absence of federal legislation, it could validly prohibit nonlawyers from engaging in this circumscribed form of patent practice." *Id.* The Florida licensing requirements were preempted by federal law to the extent that the state's requirements conflicted. The Court emphasized that states may prohibit persons from performing acts that constitute practicing law in violation of state statutes as long as federal law has not otherwise authorized a person to perform the same acts.

■ The *Sperry* decision is determinative of the issue at hand. Although Mason is not licensed to practice law in the State of Texas, his actions in connection with the bankruptcy court are authorized by Bankruptcy Rule 9010(a). Bankruptcy Rule 9010(a) provides in part that an agent may perform any act not constituting the practice of law on behalf of a party. This authorization by the bankruptcy rules is analogous to the Patent Office's authorization of nonattorney agents to practice before it.[5] Each authorization expressly permits a class of persons to perform acts as agents before a federal tribunal. Moreover, the Bankruptcy Rule 9010(a) authorization, like the patent rule authorization, does not require that the agent satisfy any licensing requirements of any state. Because Bankruptcy Rule 9010(a) is analogous to the relevant patent rule, the Supreme Court determination in *Sperry* compels this court to make a similar determination. If a nonlawyer's activities are authorized by Bankruptcy Rule 9010(a), then that authorization preempts any contrary licensing requirements of the State of Texas.

■ The authorization by Bankruptcy Rule 9010(a) preempts the State of Texas's licensing requirements to the extent that a person only performs those acts authorized by the federal rule. This court is not determining that Bankruptcy Rule 9010(a) authorizes a person to perform acts outside the bankruptcy context. The court recognizes the State of Texas's "substantial interest in regulating the practice of law within the State." *Sperry*, 373 U.S. at 383, 83 S.Ct. at 1325. Once a person begins to perform an act not authorized by Bankruptcy Rule 9010(a), the State of Texas may begin to regulate and seek to enjoin any practice in violation of its laws. Where the federal courts have adopted Bankruptcy Rule 9010(a) to specifically authorize agents to perform acts that might otherwise be prohibited by state law, however,

---

**5.** The then-existing authorization by the Commissioner of Patents provided in part that "[a]n applicant for patent ... *may be represented by an attorney* or *agent* authorized to practice before the Patent Office in patent cases." *Sperry*, 373 U.S. at 384, 83 S.Ct. at 1325. (citations omitted and emphasis in original).

the state law must yield. U.S. Const. art. VI, cl. 2.

The Bankruptcy Rule 9010(a) preemption of the State of Texas's licensing requirements can be compared to the preemption of these state licensing requirements by means of pro hac vice privileges extended by the Northern District of Texas to attorneys licensed in jurisdictions other than Texas. Local Rule 13.1(a) provides that "[a]ny attorney who is licensed to practice law ... by the highest court of any state or the District of Columbia, may be admitted to the bar of this Court...." Contrary to this local rule, Tex.Gov't Code Ann. § 81.-102 requires that "a person may not practice law in this state unless the person is a member of the state bar." The State of Texas's licensing requirements are thus preempted without contention in the pro hac vice context, and the State of Texas is not allowed to prohibit those attorneys licensed in jurisdictions other than Texas from practicing in federal court. The Seventh Circuit reached this type of preemption determination in *United States v. Peterson,* 550 F.2d 379, 383 (7th Cir.1977).

The court's determination that the authorization under Bankruptcy Rule 9010(a) preempts the State of Texas's licensing requirements follows a similar Fifth Circuit determination in *Silverman v. State Bar of Texas,* 405 F.2d 410 (5th Cir.1968). In *Silverman,* an attorney licensed by the U.S. Commissioner of Patents and the State of Texas brought an action for licensed by the U.S. Commissioner of Patents and the State of Texas brought an action for declaratory and injunctive relief challenging the validity of a regulation of the Texas State Bar. The Texas regulation was in the form of an Opinion issued by the Texas State Bar interpreting its own canons of ethics, which prohibited a registered U.S. Patent Attorney who was also licensed by the State of Texas from placing a listing in a telephone directory. The State of Texas issued this Opinion even though the U.S. Commissioner of Patents explicitly had authorized patent attorneys to place listings in a telephone directory.

Guided by the Supreme Court's decision in the *Sperry* case, the Fifth Circuit held that the Texas Bar Opinion was invalid because it conflicted with the regulation of the U.S. Patent Commissioner. *Silverman* at 414. The Fifth Circuit reasoned that, as federal patent laws are a part of the supreme law of the land, "when state law touches on an area of those federal statutes, federal policy may not be set at naught and its benefits may not be denied by state law, even if the state law is enacted in the exercise of otherwise undoubted state power." *Id.,* at 413. In the case at bar, the State of Texas's licensing requirements "touch" Bankruptcy Rule 9010(a). Bankruptcy Rule 9010(a) and the Texas licensing requirements touch and conflict where the federal courts determine that an agent is authorized to perform certain acts in the bankruptcy forum even though those same acts might otherwise be prohibited by state law. This collision between the federal and state law has come to the forefront because the UPLC of the State of Texas is attempting to dictate to the federal courts who is or is not fit to handle administrative matters in the federal bankruptcy courts. The UPLC claims that it can regulate practice in the federal courts because it believes the federal courts have adopted its standards for the unauthorized practice of law. The UPLC is mistaken.

### Mason/CBS and the Unauthorized Practice of Law

■ The court has examined the allegations against Mason and CBS in the UPLC's original petition filed in state court, and the deposition testimony and other summary judgment evidence presented, including the Bankruptcy Services Agreement between CBS and its creditor clients. The court determines as a matter of law that the business practices of Mason and CBS complained of by the UPLC do not constitute the practice of law in the uniquely administrative practice of the federal bankruptcy courts. Mason's activities are very different from those found to be the unauthorized practice of law in cases such as *In re Bachmann,* 113 B.R. 769 (Bankr. S.D.Fla.1990). The UPLC's own witnesses concede that the same activities may consti-

tute the practice of law in one context but not in another.

 The Northern District of Texas is blessed with an exceptionally talented, capable complement of bankruptcy judges, who are well qualified to ascertain and prohibit the unauthorized practice of law in their courts should the situation arise. Bankruptcy judges are granted broad discretion to determine who shall practice before them in each particular case and to monitor their conduct. *In re Chandler,* 139 B.R. 817, 819 (Bankr.S.D.Miss.1992). The court is unaware of any instance where the bankruptcy judges in this district have had any problems with Mason or CBS. CBS presently acts as an agent for creditors in approximately 28,000 Chapter 7 and Chapter 13 cases pending in the Bankruptcy Court for the Northern District of Texas. The Court notes that the standing Chapter 13 Trustee in Fort Worth permits CBS to directly access the Trustee's computer system. The computer link enables CBS to monitor cases without burden to the Trustee's office staff. The Chapter 13 Trustee has stated that "Mr. Mason's organization is a welcomed 'cog' in the wheel that keeps the high volume of Chapter 13 bankruptcy cases in the Northern District of Texas turning smoothly." [6]

This case is the result of the second investigation of Mason and his company CBS by the UPLC. Each investigation has been initiated due to self-serving complaints by bankruptcy attorneys. Apparently the creditors' bar perceives Mason as a threat to their livelihood, and the debtors' bar resents that debtors are being required by Mason's creditor clients to execute reaffirmation agreements where they might not have done so had Mason not been involved. This case is not the first in which a court has determined that the UPLC has overreached in its definition of what constitutes the unauthorized practice of law. *See Unauthorized Practice of Law Committee v. Jansen,* 816 S.W.2d 813 (Tex.

App.—Houston [14th Dist.] 1991, writ denied). It is not the responsibility of the federal courts to promote full employment for the bankruptcy bar of the State of Texas by casting the net of unauthorized practice of law so wide as to encompass the administrative matters handled by Mason and CBS.

### Unauthorized Practice of Law Standard

As the court holds that Mason's business practices are authorized under Bankruptcy Rule 9010(a), the State of Texas's licensing requirements must yield. This issue of whether Mason is authorized to act as an agent for his creditor clients depends on whether Mason is performing "any act not constituting the practice of law." Bankruptcy Rule 9010(a). The UPLC seizes this language—"any act not constituting the practice of law"—as its window of opportunity to regulate practice in the federal courts. The UPLC states that "the only applicable [unauthorized practice of law] standards in the Bankruptcy Court are the [unauthorized practice of law] standards of the State of Texas." [7] The UPLC also argues that because the federal courts have "adopted" the unauthorized practice of law standards of the State of Texas, they have the power to regulate the unauthorized practice of law in the federal courts. [8] The UPLC's position, however, illustrates why Bankruptcy Rule 9010(a) is preemptive of the State of Texas's unauthorized practice of law standards. If this court were to adopt the UPLC's view that it can regulate practice in the federal courts, then the State of Texas's "licensing board [would have] a virtual power of review over the federal determination that a person or agency is qualified and entitled to perform certain functions." *Sperry,* 373 U.S. at 385, 83 S.Ct. at 1325.

Under the UPLC's scheme of regulation, the UPLC could seek to enjoin a person from performing acts that constitute the unauthorized practice of law under the

---

**6.** Tim Truman Affidavit in Support of Defendants' Motion for Summary Judgment at 4.

**7.** UPLC's Brief in Support of its Motion for Summary Judgment at 13.

**8.** *Id.* at 16.

state's standards even though those same acts may be specifically authorized by a federal court under Bankruptcy Rule 9010(a). The potential for conflict between what the federal courts believe is the unauthorized practice of law and what the State of Texas believes is the unauthorized practice of law is substantial.

 The state standards for the unauthorized practice of law do not easily apply to the bankruptcy court because the State of Texas does not have a state analog to the federal bankruptcy court. A significant amount of activity in a bankruptcy court is administrative.[9] Within this administrative context, a federal court may determine that under Bankruptcy Rule 9010(a) an agent may perform certain acts because they will best "secure the just, speedy, and inexpensive determination of every case and proceeding." Bankruptcy Rule 1001. The federal courts must be able to exercise this inherent power and make determinations as to what is or is not the practice of law free from the licensing requirements of the State of Texas. Federal courts cannot defer to states when making determinations as to who may perform which acts in furtherance of their administration of justice. The federal courts are in the best position to make these uniquely federal determinations—not the UPLC of the State of Texas.

### CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED and Plaintiff's Motion for Summary Judgment is DENIED. Judgment will be entered for the Defendants.

SO ORDERED.

### *FINAL JUDGMENT*

For the reasons set forth in a separate memorandum opinion and order filed today,

it is ORDERED and ADJUDGED that Plaintiff The State Unauthorized Practice of Law Committee take nothing by this action and that its complaint be DISMISSED with prejudice. Plaintiff's application for a Permanent Injunction against Defendants is DENIED. Costs of court as calculated by the clerk of court are taxed against Plaintiff.

SO ORDERED this 20th day of October, 1993.

---

9. Prior to the Bankruptcy Reform Act of 1978, bankruptcy judges, in addition to having judicial duties, were responsible for administrative, supervisory, and clerical functions in individual cases. The Honorable Robert I. Eisen and David K. Smrtnik, 28 DePaul L.Rev. 1007, 1017 (1977), reprinted in 1978 U.S.C.C.A.N. at 5787, 6049. One of the express purposes of the United States Congress in enacting the Reform Act was to separate judicial and administrative functions, thus removing the bankruptcy judge from the clerical and administrative tasks. H.R.Rep. No. 595 at 5963.