**In re Edwin L. STACY and Susan I. Stacy, Debtors.**

**UNITED STATES TRUSTEE, Plaintiff,**

**v.**

**Robert TANK, dba Legal Alternatives, dba Law Alternatives, Defendant.**

**Bankruptcy No. 395–33618–elp7. Adv. No. 95–3471.**

United States Bankruptcy Court, D. Oregon.

March 11, 1996.

settlement negotiations on the need for a Co–Owners' committee should have been abundantly clear.

Pamela J. Griffith, Portland, OR, for U.S. Trustee.

Robert Tank, pro se.

## MEMORANDUM OPINION

ELIZABETH L. PERRIS, Bankruptcy Judge.

In this adversary proceeding, the U.S. Trustee ("UST") seeks to permanently enjoin defendant Robert Tank ("Tank"), a bankruptcy petition preparer, from assisting or advising any person in connection with the filing or prosecution of any bankruptcy case or any documents in any bankruptcy case. The UST also asks the court to fine Tank for violations of 11 U.S.C. § 110(f)(1), and requests that Tank turn over to the Chapter 7 trustee, for the benefit of debtors Susan and Edwin Stacy's estate, funds debtor Susan Stacy ("Stacy") paid to Tank for his services in connection with the filing of her first bankruptcy petition. The matter came on for trial on February 21, 1996.[1] This is a core proceeding. 28 U.S.C. § 157(b). After hearing the testimony and reviewing the evidence and the joint statement of agreed facts, for the reasons set forth below, I grant the requested relief.

1. The trial was consolidated with the hearing in the main case of Edwin L. and Susan I. Stacy on the Chapter 7 trustee's motion for an order certifying violations of 11 U.S.C. § 110 to the District Court. *See* 11 U.S.C. § 110(i).

2. There was conflicting evidence about what occurred in the interactions between Tank and Stacy and the other debtor witnesses. To the

## I. BACKGROUND FACTS

Defendant Robert Tank is a bankruptcy petition preparer who does business under the assumed business name of Legal Alternatives or Law Alternatives. He has been engaged in that business for 11 years, during which time he has assisted thousands of debtors in preparing bankruptcy petitions in Oregon, Washington, and numerous other states. Tank is not an attorney. He advertises his services approximately once every week in various publications, primarily the Nickel Ads, using the business name of Legal Alternatives or Law Alternatives.

In December 1994, after seeing an advertisement for Legal Alternatives in the Nickel Ads or a similar publication, Susan Stacy called Tank on the telephone and talked with him about having him assist her in filing bankruptcy. On December 5, she met with Tank at his office to prepare the documents for filing. She paid him $50 of a $95 fee. She explained to Tank that she had received a summons to small claims court and was in danger of having her wages garnished, so the petition needed to be filed quickly. Stacy gave Tank a complete list of creditors, which included their addresses and the amounts owed.[2] She filled out an application form used by Legal Alternatives and answered Tank's questions about her ownership of personal property. She explained to him that she had nothing except the clothes on her back and her wedding ring. She was living with her mother and did not have any household furnishings or a car. She did not give him an estimate of the value of the clothes and wedding ring.

On December 9, 1994, Stacy returned to Tank's office and signed the papers that Tank had prepared for her. She then hand delivered them to the bankruptcy court for

extent that the debtors had different recollections than Tank did, I found the debtors to be more credible. The events about which the debtors testified were important to each debtor; each had a clear memory of what had transpired. Tank's testimony was more general, often relating to his usual practices rather than to the events involving a particular debtor.

an "emergency," or "minimum," filing.[3] Schedule C, which was filed with the petition, showed that Stacy claimed as exempt household furnishings worth $3,000, wearing apparel worth $500, jewelry worth $500, and $400 cash or other property. Stacy received a notice that she needed to file additional documents within 15 days. Stacy immediately contacted Tank to tell him that she needed the rest of the papers to file with the court. On January 3, 1995, Stacy signed the Statement of Intention and Statement of Financial Affairs. She understood from Tank that he was going to send the documents to the court and that he had taken care of everything. Those documents were not filed with the court, despite Tank's repeated assurances to Stacy that he was taking care of everything and not to worry. Stacy then received a notice from the court that her case was going to be dismissed for failure to file ordered documents. She contacted Tank, who filed an objection to the dismissal on Stacy's behalf, representing that the documents had not been timely received because of "slow mail during the Christmas season." Tank continued to assure Stacy that the papers had been filed and not to worry. Stacy's case was dismissed on January 31, 1995 for failure to file documents.

Sometime between February 6 and mid-February, 1995, Stacy returned to Tank for assistance in refiling the bankruptcy, this time jointly with her husband. She provided all of the information that was needed to file the joint petition. Tank did not charge another fee, and he agreed to waive the $45 balance remaining on the $95 fee from the first case, due to the inconvenience Stacy had suffered. Tank did not complete the documents for the filing at that time. Stacy began calling Tank's office at least three times each week, trying to find out what was happening with her papers. She seldom got through to Tank, often times talking to Tank's receptionist. On more than one occasion, Stacy got frustrated with Tank's failure

to respond by telephone and went to Tank's office to try to get the papers. When she did talk to Tank, he told her that he was working on the papers and that they would be done in a few days. While she was waiting for the paperwork to be completed, Stacy was being contacted constantly by her creditors, who were demanding payment.

Tank finally completed the papers and Stacy and her husband signed them on May 29. Stacy sent the petition via Federal Express to the court for filing, where it was filed on June 1. Tank gave Stacy $5 to help her with the filing fee. After the joint petition was filed, the court notified the Stacys that numerous documents were missing and needed to be filed by June 16. Stacy contacted Tank and then went to his office between June 2 and June 8 to pick up the documents that had been missing or were deficient. She brought those documents to the court on June 9. The documents that Tank completed for the Stacys in early June contained different financial information than the documents he had completed for them in May. Nothing in their circumstances had changed to warrant the differences, and Tank did not discuss the changes he had made with the Stacys. The court returned those documents to the Stacys with an explanation of what was wrong with the documents. On June 14, Stacy received assistance from a court clerk in getting her papers in order for filing, and she successfully filed them on June 14.

Tank also assisted Crystal Norred in preparing her bankruptcy petition. She contacted Tank because her wages were about to be garnished because of nonpayment of a student loan. Tank explained that Norred would have to file a Chapter 13 in order to obtain a discharge of the student loan. He also indicated that he could recover for her a tax refund that had been taken by the student loan creditor. He told her that the creditor would have to return the refund in 30 or 90 days after the bankruptcy filing. Tank told Norred that she could tell the

---

**3.** The debtor is required to file schedules of assets and liabilities, of current income and expenditures, and of executory contracts and unexpired leases, a statement of financial affairs, and a statement of intention. Bankruptcy Rule 1007(b). Ordinarily, those schedules and state-

ments are filed with the petition. Bankruptcy Rule 1007(c). If the petition is accompanied by a list of all the creditors and their addresses, the schedules and statements may be filed within 15 days after entry of the order for relief. *Id.*

creditor that he was her lawyer and that the creditor should contact him. Norred did not tell Tank the value of any of her personal property except her car. She told him that her rent was $490. They did not discuss any specifics of her Chapter 13 plan. Tank told Norred he would make the expense schedule work out so that she would have $50 left over to pay the Chapter 13 plan. Norred provided Tank with a complete list of her creditors.

Tank did not complete the papers immediately. Norred contacted Tank every Friday asking where the papers were, and Tank would tell her that he was working on them and that they would be ready in a few days. After waiting four months, Norred went to Tank's office and waited two hours while Tank completed the papers. She filed the documents Tank prepared. The papers that Tank prepared contained valuations of Norred's personal property that Tank himself had inserted. Tank, not Norred, determined under what categories to assign debt. The schedules showed that Norred's rent was $400 instead of $490, as Norred had told Tank. Tank filled out the Chapter 13 plan for Norred without her input. The documents that Tank prepared contained errors. They showed her son as a daughter; they did not contain the complete list of creditors that Norred had provided to Tank; they showed an incorrect length of employment; they were marked Chapter 7 rather than Chapter 13; and they showed that she owed a debt to the IRS, when in fact she was attempting to recover her tax refund from the IRS and did not owe it any money. Norred received a notice from the court that various documents were deficient or missing. She then hired a lawyer who completed the filing for her.

Tank also assisted Leo Schoen, who had learned about Legal Alternatives from an advertisement in the Nickel Ads. Schoen contacted Tank in July 1995 regarding filing bankruptcy. Schoen understood that Tank was advising that he file both a Chapter 13 and a Chapter 7. By the time Schoen met with Tank, Schoen was two months behind on his payment on his pick up truck. Tank told Schoen to stop making payments on the truck, which Schoen did. Tank did not prepare Schoen's petition immediately. When Tank did not complete the papers right away, Schoen contacted Tank often over the next two months to determine the status of his papers. Tank would tell him that the papers were in the mail and should be there in a few days. The papers never came. Tank also told Schoen that he could tell his creditors that Tank was his attorney. On September 17 the creditor with a security interest in the truck repossessed it. The next day, Schoen went to Tank's office and demanded his papers. Tank told Schoen that he would help him get his truck back. Schoen waited an hour and a half while Tank completed his paperwork. Schoen did not tell Tank what chapter of the Bankruptcy Code to file under; Tank prepared a Chapter 13 petition for Schoen. Although Schoen had not provided Tank with property values or specified what property he wanted to claim as exempt, the schedules Tank prepared assigned values to Schoen's personal property, scheduled certain property as exempt and provided statutory citations for the exemptions. Schoen did not tell Tank how to categorize the debts; the schedules Tank prepared categorized Schoen's debts. The documents had deficiencies, including not listing all of the creditors and improperly scheduling debts. After three weeks passed and Tank had not gotten Schoen's truck back for him, Schoen hired an attorney to complete his Chapter 13 case.

## II. ISSUES

1. Did Tank violate 11 U.S.C. § 110?

2. Did Tank engage in the unlawful practice of law?

## III. DISCUSSION

*1. 11 U.S.C. § 110.*

Section 110 provides penalties for bankruptcy petition preparers who do not comply with its provisions. The UST alleges that Tank violated section 110(f)(1) by advertising under the assumed business name of Legal Alternatives, that Tank should turn over to the trustee the fee he received from Stacy because it exceeds the value of his services, 11 U.S.C. § 110(h)(2), and that the court should enjoin Tank from engaging in fraudulent, unfair or deceptive conduct under 11 U.S.C. § 110(j)(2)(a)(i)(III).

*(a) Section 110(f).*

■ The UST claims that Tank violated section 110(f) by advertising his services under the business name of Legal Alternatives. Section 110(f) prohibits a bankruptcy petition preparer from advertising using the word "legal" or any similar term.[4] The statute is violated when the term "legal" or something similar is contained in the name of the business. *In re Gavin*, 181 B.R. 814, 823 (Bankr. E.D.Pa.), *aff'd* 184 B.R. 670 (E.D.Pa.1995).

■ In the joint statement of agreed facts, Tank admits that he advertised using the name "Legal Alternatives" approximately once a week from the date section 110 became effective to the present. Section 110 became effective on October 22, 1994. The trial in this case was held on February 21, 1996. Therefore, Tank has advertised using the term "legal" approximately 62 times since the law was enacted prohibiting such advertising. Tank's only explanation for his blatant disregard for the law is that he thought it merely precluded his advertising under the category of legal services. That is not a reasonable reading of the law. In view of Tank's admission that he knew about the provisions of section 110 even before it was passed and was informed of its provisions after it passed, a substantial sanction is warranted. Section 110(f)(2) allows a sanction of up to $500 per violation. At trial, the UST asked for a fine of up to $5,000. I conclude that a fine of $5,000 is warranted because of the numerous knowing violations.

*(b) Section 110(h).*

■ The UST alleges that, under the circumstances of this case, the $50 fee paid by Stacy to Tank is in excess of the value of services rendered for the documents prepared, and should be turned over to the trustee pursuant to 11 U.S.C. § 110(h)(2).[5] I

agree with the UST that Stacy obtained no benefit from Tank's preparation of her first bankruptcy filing, which was dismissed because of his failure to file the remaining documents. Therefore, Tank must turn over to the trustee the amount of the fee paid. However, because Tank gave the Stacys $5 of his own money to facilitate the filing of the second petition, I will order him to turn over $45 to the trustee.

*(c) Section 110(j).*

■ The UST seeks to enjoin Tank's conduct under section 110(j)(2)(A)(i)(III) as fraudulent, unfair or deceptive. Subsection (j) provides:

"(1) A debtor for whom a bankruptcy petition preparer has prepared a document for filing, the trustee, a creditor, or the United States trustee ... may bring a civil action to enjoin a bankruptcy petition preparer from engaging in any conduct in violation of this section or from further acting as a bankruptcy petition preparer.

"(2)(A) In an action under paragraph (1), if the court finds that—

"(i) a bankruptcy petition preparer has—

" . . . . .

"(III) engaged in any other fraudulent, unfair, or deceptive conduct; and

"(ii) injunctive relief is appropriate to prevent the recurrence of such conduct,

"the court may enjoin the bankruptcy petition preparer from engaging in such conduct.

"(B) If the court finds that a bankruptcy petition preparer has continually engaged in conduct described in subclause (I), (II), or (III) of clause (i) and that an injunction prohibiting such conduct would not be sufficient to prevent such person's interfer-

---

4. Section 110(f) provides:
 "(1) A bankruptcy petition preparer shall not use the word 'legal' or any similar term in any advertisements, or advertise under any category that includes the word 'legal' or any similar term.
 "(2) A bankruptcy petition preparer shall be fined not more than $500 for each violation of paragraph (1)."

5. Section 110(h)(2) provides:

"The court shall disallow and order the immediate turnover to the bankruptcy trustee of any fee referred to in paragraph (1) [relating to fees paid to a bankruptcy petition preparer] found to be in excess of the value of services rendered for the documents prepared. An individual may exempt any funds so recovered under section 522(b)."

ence with the proper administration of this title, ... the court may enjoin the person from acting as a bankruptcy petition preparer.

"(3) The court shall award to a debtor, trustee, or creditor that brings a successful action under this subsection reasonable attorney's fees and costs of the action, to be paid by the bankruptcy petition preparer."

The UST alleges five instances of fraudulent, unfair or deceptive conduct: (1) when Stacy received notice that the first case was going to be dismissed because of failure to file papers, Tank assured her that everything was in order when it was not; (2) when Stacy talked to Tank about deficiencies in the second petition, Tank assured her that everything was in order when it was not; (3) Tank altered some of Stacy's documents without her knowledge; (4) Tank failed to disclose in the second petition that a first petition had been filed; and (5) Tank inserted information on Stacy's schedules that was not based on information received from her.

I conclude that the UST has proved each of those allegations. Stacy testified credibly that, when she was notified of deficiencies in the first bankruptcy filing, she contacted Tank who assured her that everything was taken care of and not to worry, when in fact that was not true. I believe Stacy's testimony that Tank led her to believe that Tank would file the papers for her. Telling Stacy that everything was in order when it was not was fraudulent and deceptive.

Stacy testified credibly that, when she learned of the deficiencies in the second petition, Tank again assured her that everything was in order and not to worry, when in fact that was not the case. That representation was fraudulent and deceptive.

The evidence shows that Tank altered some of Stacy's documents without her knowledge. For example, in the second bankruptcy filing, the first Schedule B—Personal Property that Tank prepared for the Stacys showed miscellaneous household goods and furnishings valued at $3,000, clothing valued at $500, and jewelry valued at $500. In the second Schedule B that Tank prepared for the Stacys in the second bankruptcy, the value of the household goods and

furnishings remained the same, but the schedule did not list any jewelry. The first Schedule J Tank prepared for the second bankruptcy, showing the Stacys' expenses, showed expenses of $1,023, with entries for nine categories of expenses, including $300 for home maintenance. The second Schedule J Tank prepared for the second bankruptcy showed total expenses of $200, with no expenses for anything other than rent. Stacy testified credibly that she did not know that the schedules had been changed between the first and the second set of papers, and that there was no reason for the change.

It is not disputed that the second petition that Tank prepared represented that no prior bankruptcy case had been filed within the last six years. Because Tank prepared the first petition for Stacy, he had to have known that a prior bankruptcy petition had been filed within the last six years.

Finally, the evidence shows that Tank inserted information on the schedules in both cases that was not based on information provided by the Stacys. There is essentially no dispute that Tank inserted values for personal property, including household furnishings, clothing, jewelry and a car, that did not reflect values provided by the Stacys. In fact, Susan Stacy testified that she told Tank that she had no household furnishings, because she was living with her mother. Nonetheless, in both petitions that Tank prepared, he inserted a value of $3,000 for household furnishings. Similarly, Stacy testified that she told Tank that she did not own a car, but in the schedules for the second bankruptcy, Tank included an automobile valued at $1,700.

Each of those instances of conduct constituted fraudulent, unfair or deceptive conduct, in violation of 11 U.S.C. § 110(j)(2)(A)(i)(III). Pursuant to 11 U.S.C. § 110(j)(2), I conclude that the UST is entitled to an injunction permanently enjoining Tank from engaging in those fraudulent, unfair or deceptive practices. I will grant the UST's request to make the injunction extend nationwide. The conduct that violates section 110(j) is unlawful nationwide, and Tank prepares petitions

for filing in jurisdictions outside the District of Oregon.

2. *Unauthorized practice of law.*

The UST also alleges that Tank is engaged in the unauthorized practice of law. Tank asserts that any claim for unauthorized practice of law must be brought in state court, and that this court does not have jurisdiction to determine this claim. He also denies that his activities constitute the practice of law.

*(a) Jurisdiction.*

■■■ At the trial, Tank argued that this court does not have jurisdiction to determine whether he engaged in the unlawful practice of law, because that is a matter of state law and must be regulated by the state courts. I disagree. Federal courts, including bankruptcy courts, have inherent authority to regulate practice in cases pending before them. *State Unauthorized Practice of Law v. Paul Mason,* 159 B.R. 773, 776 (N.D.Tex.1993); *In re Evans,* 153 B.R. 960, 966 (Bankr.E.D.Pa. 1993). *See also* 11 U.S.C. § 105 (bankruptcy courts have authority to take any action or make any "determination necessary to enforce or implement court orders or rules, or to prevent an abuse of process."). Congress recognized that authority when it enacted section 110. Subsection 110(k) provides that "[n]othing in this section shall be construed to permit activities that are otherwise prohibited by law, including rules and laws that prohibit the unauthorized practice of law."

*(b) Law governing unlawful practice of law.*

■ I look to state law to determine what constitutes the unauthorized practice of law. *In re Lyvers,* 179 B.R. 837, 840 (Bankr. W.D.Ky.1995); *In re Samuels,* 176 B.R. 616, 620 (Bankr.M.D.Fla.1994); *Matter of Bright,* 171 B.R. 799 (Bankr.E.D.Mich.1994).

ORS 9.160 provides that, "[e]xcept for the right reserved to litigants by ORS 9.320 to prosecute or defend a cause in person, no person shall practice law or represent that person as qualified to practice law unless that person is an active member of the Oregon State Bar." There is no statutory definition of "practice law." In *Oregon State Bar v. Security Escrows, Inc.,* 233 Or. 80, 377 P.2d 334, 339 (1962), the Supreme Court focused on the exercise of discretion:

> "For the purposes of this case [involving the drafting of land conveyance documents], we hold that the practice of law includes the drafting or selection of documents and the giving of advice in regard thereto any time an informed or trained discretion must be exercised in the selection or drafting of a document to meet the needs of the persons being served.... [A]ny exercise of an intelligent choice, or an informed discretion in advising another of his legal rights and duties, will bring the activity within the practice of the profession."

Thus, while acting as a mere scrivener by filling in blanks under the direction of the customer on forms selected by the customer or selling divorce kits has been held not to be the practice of law, *Oregon State Bar v. Fowler,* 278 Or. 169, 563 P.2d 674 (1977); *Oregon State Bar v. Gilchrist,* 272 Or. 552, 538 P.2d 913 (1975), advising a customer about what benefits are available under the immigration law, how to obtain those benefits and advising what forms to use was held to be the practice of law. *Oregon State Bar v. Ortiz,* 77 Or.App. 532, 713 P.2d 1068 (1986). A nonlawyer's personal contact with the customer in the nature of consultation, explanation, recommendation or advice or assistance in selecting particular forms, or suggesting or advising how the forms should be used to solve the particular customer's problems was also determined to constitute the practice of law. *Gilchrist.*[6]

*(c) The evidence.*

■ The UST provided expert testimony from Martha Hicks, who is disciplinary counsel with the Oregon State Bar and the liaison

---

6. At trial, Tank argued that the statute governing the practice of law had changed after *Gilchrist* was decided to liberalize the prohibition on personal contact. The court directed Tank to submit his authority for his argument within a few days of the trial. As of the date of this Memorandum Opinion, Tank has not submitted any authorities, and the court is not aware of any change in the statutes regulating the practice of law that would affect the validity of the holding in *Gilchrist.* Further, the UST's expert witness also relied on the law as stated in *Gilchrist.*

to the Unlawful Practice of Law Committee. She testified that, in her expert opinion, in the context of a bankruptcy case it is the unlawful practice of law to (1) suggest values for personal property if those values are based on a statutory amount; (2) advise a customer whether to include personal property on bankruptcy schedules; (3) suggest to a debtor to schedule a car that he or she intends to buy in the future; (4) suggest exemptions; (5) submit a letter to the court objecting to a proposed dismissal; (6) advise a customer to tell creditors that the nonlawyer is a lawyer; (7) advise a customer not to make payments to creditors in the context of a bankruptcy; (8) advise someone to file a Chapter 13 case instead of a Chapter 7 case because a student loan would not be discharged in a Chapter 7; (9) recommend that a debtor file under one particular chapter rather than another; (10) prepare a Chapter 13 plan; (11) classify debts; and (12) advise regarding the recovery of a tax refund.

The evidence establishes that Tank did all of those things. In each of the cases about which there was testimony, Tank decided how to value personal property, based on the allowable statutory exemptions. He advised his customers to schedule all of their personal property. He included in the Stacys' schedules an automobile that the Stacys did not own, because they said they might buy a car in the future. Tank chose the exemptions for each of the debtors who testified; none of them told him what property they wanted to claim as exempt. He wrote a letter, intervening on behalf of Susan Stacy, objecting to the proposed dismissal of her first bankruptcy case. Both Crystal Norred and Leo Schoen testified credibly that Tank told them to advise their creditors that Tank was their attorney. Tank advised Schoen to stop paying his creditors, with the result that Schoen lost his truck to the creditor. Tank advised Norred that she needed to file a Chapter 13 case because she wanted to discharge her student loans, which she could not do in a Chapter 7. He chose Chapter 13 for Schoen's bankruptcy filing, based on his assessment of Schoen's financial difficulties and what Schoen was attempting to accomplish by filing bankruptcy. Tank prepared Norred's Chapter 13 plan; she did not even know what a plan should contain. He classified the debts of all of the debtors who testified, and not always correctly. Finally, Tank advised Norred about the possibility that she could recover the tax refund that had been seized by her creditor.

All of those activities involve the exercise of informed or trained discretion in advising another of his or her legal rights and duties. Under Oregon law, that constitutes the unlawful practice of law.

*(d) Remedy.*

 The UST seeks to permanently enjoin Tank from doing business as a bankruptcy preparer anywhere in the United States. Tank should be permanently enjoined from engaging in the specific conduct that I have determined constitutes the unlawful practice of law. The question is whether he should also be enjoined from acting as a bankruptcy petition preparer, and whether any such injunction should apply nationwide.

I look to the Oregon Supreme Court cases to determine what sanction that court considers appropriate for the unauthorized practice of law. In *Oregon State Bar v. Security Escrows, Inc.*, 377 P.2d at 340, the court ordered that the offending party be enjoined from preparing real estate conveyancing documents, except that Security Escrows' agents could fill in blanks "under the direction of a customer upon a form or forms selected by the customer." As the court said, "If the customer does not know what forms to use or how to direct their completion, then he needs legal advice. If the customer does know what he wants and how he wants it done, he needs only a scrivener." *Id.* In *Oregon State Bar v. Gilchrist*, 538 P.2d at 919, the court concluded:

> "[I]n the advertising and selling of their divorce kits the defendants are not engaged in the practice of law and may not be enjoined from engaging in that part of their business. We further conclude, however, that all personal contact between defendants and their customers in the nature of consultation, explanation, recommendation or advice or other assistance in selecting particular forms, in filling out any part

of the forms, or suggesting or advising how the forms should be used in solving the particular customer's marital problems does constitute the practice of law and must be and is strictly enjoined."

Given that guidance, I conclude that Tank should not be permanently enjoined from acting as a bankruptcy petition preparer. The Oregon cases specifically allow the offending party to continue engaging in conduct that does not constitute the practice of law, while enjoining conduct that does constitute the practice of law. Therefore, Tank may continue to complete bankruptcy petitions and forms under the direction of his customers, based on information provided by those customers.

I further conclude that Tank should be permanently enjoined from engaging not only in the specific activities that the UST alleged and that I have found to constitute the practice of law, but also from engaging in more generalized categories of conduct that the evidence shows Tank engaged in and which also constitutes the practice of law. Therefore, Tank shall be permanently enjoined from advising customers regarding what forms are needed, how to complete the forms, what information is required on each form, what chapter of the Bankruptcy Code would best meet the customer's needs, and how to handle problems with creditors. Tank shall be enjoined from directing customers to specific pages or sections of bankruptcy publications, such as the Nolo Press publication to which Tank referred during the trial, because such specific referrals effectively suggest a specific form or course of action. The prohibition will not prevent Tank from identifying for his customers publications regarding bankruptcy. He simply cannot direct the customers to specific pages or sections. Further, Tank shall be enjoined from choosing for customers which forms to file or what chapter of the Bankruptcy Code to file under, as well as from appearing in court, whether in person or in writing, to advocate on behalf of a customer.

I will not extend the injunction for the unauthorized practice of law nationwide. The practice of law is regulated by the individual states. What is considered to be the practice of law in Oregon would not necessarily be considered to be the practice of law in another state. Therefore, the injunction will apply to Tank and his employees' conduct in Oregon. It will apply to conduct in Oregon, even if the bankruptcy petition is prepared for filing outside the District of Oregon.

## IV. CONCLUSION

Based on my findings and conclusions, I will enter an order fining Tank $5,000 for violations of 11 U.S.C. § 110(f) and requiring him to turn over to the Chapter 7 trustee in the case of Susan and Edwin Stacy, Case No. 395–33618, $45 pursuant to 11 U.S.C. § 110(h). Further, pursuant to 11 U.S.C. § 110(j), I will permanently enjoin Tank and his employees from engaging in the following activities anywhere in the United States:

(1) Telling customers that bankruptcy filings he is preparing are in order when they are not;

(2) Altering customers' documents without their knowledge and consent;

(3) Knowingly failing to disclose in bankruptcy filings that the customer had filed a bankruptcy petition within the previous six years;

(4) Inserting information on customers' bankruptcy schedules that is not based on information received from the customer.

For the unauthorized practice of law, I will permanently enjoin Tank and his employees from engaging in the following activities in the state of Oregon:

(1) Directing customers to specific pages or sections of bankruptcy publications, including without limitation Nolo Press publications;

(2) Providing personal property values for customers based on statutory exemption amounts;

(3) Advising customers to list personal property that the customer does not own;

(4) Suggesting to customers what property may be claimed as exempt, including specifically advising customers regarding the amount and statutory basis of exemptions that potentially apply to the customer's property;

(5) Advising customers to tell their creditors that Tank is an attorney;

(6) Classifying debts for customers;

(7) Advising customers regarding what forms are needed;

(8) Advising customers regarding how to complete the forms;

(9) Advising customers regarding what information is required on each form;

(10) Advising customers regarding which chapter of the Bankruptcy Code would best meet the customer's needs;

(11) Advising customers regarding how to handle problems with creditors, including without limitation advising customers not to pay creditors in the context of a bankruptcy or advising customers regarding how to recover tax refunds;

(12) Choosing for customers what forms to file;

(13) Choosing for customers the chapter of the Bankruptcy Code under which to file;

(14) Appearing in court, either in person or in writing, to advocate on behalf of a customer.

This Memorandum Opinion shall constitute Findings of Fact and Conclusions of law as required by Bankruptcy Rule 7052 and Fed. R.Civ.P. 52, and they shall not be separately stated. The UST should submit an order consistent with this opinion.